IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| REYNOLDS INNOVATIONS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Civil Action No. 1:15-cv-317 |
| NO LEAF VAPOR COMPANY, INC., ) | |
| d/b/a ) | |
| "YOUVAPEFORLESS.COM", and ) | |
| LAWRENCE GOLDSTEIN, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, Reynolds Innovations Inc. ("RII") states the following for its Complaint against Defendants No Leaf Vapor Company, Inc. d/b/a "YOUVAPEFORLESS.COM," and Lawrence Goldstein, individually, (collectively, "Defendants"):

## NATURE OF THE ACTION

1. This is an action at law and in equity for trademark infringement, unfair competition and false designation of origin, and trademark dilution arising under Sections 2, 32, 37 and 43 of the Federal Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1051 *et seq.*; trademark infringement and unfair competition arising under the common law of the State of North Carolina; and unfair or deceptive trade practices arising under N.C. Gen. Stat. §§ 75-1 *et seq.*

1

2. As more fully described below, without RII's authorization, Defendants have used and continue to use trademarks that are colorable imitations of, and are confusingly similar to, RII's federally-registered trademarks in the United States in connection with the sale of Defendants' liquid nicotine products via the Internet. In particular, Defendants have used, without RII's authorization, colorable imitations of the famous CAMEL and Camel Design trademarks and variations thereof (collectively, the "CAMEL Marks"). An example of Defendant's infringing uses is shown immediately below.



**Camel** Light
SKU 00077
A great Turkish Blend of e-juice that tastes just like the cigarette.
$4.95
Buy Now

3. On information and belief, Defendants have been and continue to be engaged in the business of operating the Internet websites at <www.noleafvapor.ecwid.com>, <www.witchesbrewvapor.com>, and <www.youvapeforless.com> ("Defendants Websites"), through which Defendants actively promote and sell flavored liquid products known as "e-liquid" for use with electronic cigarettes. On further information and belief, without RII's authorization, Defendants have used RII's famous and federally-registered CAMEL Marks, or colorable imitations thereof, in the advertising and sale of their liquid nicotine products.

4. On information and belief, without RII's authorization, Defendants have sold and shipped, and continue to sell and ship, varieties of liquid nicotine products bearing trademarks that are confusingly similar to, and colorable imitations of, RII's federally-registered and famous CAMEL Marks to customers in the United States and in this District.

5. RII has not authorized or permitted Defendants to use its CAMEL Marks, or colorable imitations of any of the marks owned by RII, in connection with Defendants' liquid nicotine products. Unless enjoined by this Court, Defendants' conduct will continue to result in a likelihood of consumer confusion and irreparable injury to RII.

**PARTIES, JURISDICTION, AND VENUE**

6. RII is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at 401 North Main Street, Winston-Salem, North Carolina. RII is a trademark holding company and a subsidiary of R.J. Reynolds Tobacco Company. RII is therefore the record owner, in its own right or by assignment from its predecessors-in-interest, of the CAMEL Marks that are at issue in this dispute, including the federal trademark registrations that are identified below. For convenience, and unless the context indicates otherwise, the term "Reynolds" will be used to refer collectively to RII, RII's predecessors-in-interest and/or RII's corporate affiliates who use the trademarks owned by RII under authority from RII.

7. On information and belief, Defendant No Leaf Vapor Company, Inc. (the "Defendant Company") is a corporation organized under the laws of Illinois, with an address at 116 Penny Ave., East Dundee, Illinois 60118. On further information and

3

belief, the Defendant Company conducts business via the Defendants' Websites.

8. On information and belief, Lawrence Goldstein ("Mr. Goldstein"), is a resident of Illinois with an address at 116 Penny Ave., East Dundee, Illinois 60118. On further information and belief, Mr. Goldstein directs and controls the business activities of the Defendant Company, including the operation of Defendants' Websites.

9. This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338. As to the state law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of doing business in this district. Defendants own and operate Defendants' Websites, which are interactive websites that are accessible by Internet users in this District and offer goods to residents of North Carolina. The infringing products that Defendants advertise and offer under the CAMEL Marks or colorable imitations thereof, are capable of being ordered, and have been ordered, by purchasers in North Carolina, and are capable of being shipped, and have been shipped, to purchasers in North Carolina.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that, on information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

12. This Court has jurisdiction to enter injunctive relief, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

13. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

14. At all times material hereto, Reynolds has been, and currently is still, engaged in the business of manufacturing, distributing, marketing, advertising, offering for sale, and selling various types of tobacco products throughout the United States under multiple trademarks owned by RII and under authority from RII. As more fully described below, RII's famous CAMEL Marks are registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") and are used in connection with the sale of cigarettes, among other things. RII sells products under the CAMEL Marks across the United States. RII's CAMEL Marks are famous throughout the United States.

15. In addition to its traditional tobacco products, Reynolds has recently begun offering for sale in the marketplace, under the brand name VUSE, electronic cigarette products, components and accessories.

### CAMEL Marks

16. Beginning at least as early as 1913, Reynolds adopted and began using the distinctive designation CAMEL in interstate commerce for the purpose of identifying and distinguishing Reynolds's tobacco products from the products of other manufacturers and distributors of tobacco. Reynolds has advertised, marketed, distributed, offered for sale, and sold its products under the CAMEL Marks continuously for 100 years.

17.     On September 30, 1919, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 126,760 for the trademark CAMEL (stylized, as shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'760 Registration").

# CAMEL

The '760 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '760 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '760 Registration, together with USPTO assignment records reflecting RII's ownership of the '760 Registration, is attached hereto as Exhibit 1.

18.     On January 13, 1976, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,030,232 for the Camel Design trademark (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'232 Registration").



The '232 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '232 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '232 Registration, together with USPTO assignment records reflecting RII's ownership of the '232 Registration, is attached hereto as Exhibit 2.

19. On April 29, 1986, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,391,824 for the trademark CAMEL & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'824 Registration").



The '824 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '824 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate

7

of Registration for the '824 Registration, together with USPTO assignment records reflecting RII's ownership of the '824 Registration, is attached hereto as Exhibit 3.

20. On February 20, 2007, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,211,464 for the trademark CAMEL, in standard characters, on the USPTO's Principal Register for use in connection with "snuff, namely snus" (the "'464 Registration"). The '464 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '464 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "snuff, namely snus." A true and accurate copy of the Certificate of Registration for the '464 Registration, together with USPTO assignment records reflecting RII's ownership of the '464 Registration, is attached hereto as Exhibit 4.

21. On October 7, 2008, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,512,391 for the trademark CAMEL & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'391 Registration").



The '391 Registration depicts one example of packaging for CAMEL cigarettes (the "Camel Pack Design"). The '391 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '391 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '391 Registration, together with USPTO assignment records reflecting RII's ownership of the '391 Registration, is attached hereto as Exhibit 5. (The '760, '232, '824,'464 and '391 Registrations are referred to collectively hereinafter as the "CAMEL Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "CAMEL Marks.")

22. RII owns, *inter alia*, the CAMEL Registrations, the CAMEL Marks, and all the goodwill associated therewith in the United States. The CAMEL Registrations

9

remain valid, subsisting, and uncancelled, and have become incontestable as described above.

23. The CAMEL Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

24. The CAMEL Marks inherently serve to distinguish Reynolds's tobacco products from those of others. The CAMEL Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the CAMEL Marks throughout the United States, consumers of tobacco products recognize the CAMEL Marks as symbols of the highest quality of tobacco products, and associate and identify the CAMEL Marks with Reynolds or with a single source. Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

## Defendants' Unlawful Acts

25. On information and belief, Defendants advertise, offer for sale, and sell, among other things, flavored liquid nicotine products for use with electronic cigarettes.

26. Defendants' Websites offer liquid nicotine products in various flavors. Printouts of web pages from Defendants' Websites, showing these flavors, are attached hereto as Exhibit 6.

27. On information and belief, Defendants have advertised, offered for sale, and sold through Defendants' Websites liquid nicotine products advertised under and/or bearing the CAMEL Marks, or marks that are confusingly similar to and colorably

10

imitate the CAMEL Marks.  *See* Exhibit 6.  Hereinafter, these liquid nicotine products advertised, offered for sale, and sold by Defendant will be referred to as the "Infringing Products."

28. That Defendants are using and free-riding on the goodwill and reputation of the famous CAMEL Marks is also evidenced by the fact that Defendants use a nearly wholesale copy of the Camel Pack Design in connection with the flavor identified as "Camel Light."  *See* Exhibit 6.  The camel depiction used by Defendants is virtually identical to the Camel Design trademark shown in the '232 Registration, as well as RII's camel design element shown in the '824 and '391 Registrations.  *See* Exhibits 2, 3, and 5.

29. On information and belief, Defendants have sold and continue to sell the Infringing Products through Defendants' Websites to purchasers throughout the United States, including North Carolina.

30. True and correct printouts of photographs of Infringing Products, as received by a purchaser in North Carolina, are attached hereto as Exhibit 7.

31. Reynolds did not and does not manufacture, distribute, market, offer for sale, or sell any electronic cigarette or liquid nicotine products under the CAMEL Marks.

32. RII has not authorized, and does not authorize, Defendants' use of the CAMEL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the manufacture or sale of Defendants' liquid nicotine products or any other products of Defendants.

# FIRST CLAIM FOR RELIEF
## (Infringement of Federally Registered Trademarks under 15 U.S.C. § 1114)

33. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

34. Defendants' unauthorized use of the registered CAMEL Marks and Defendants' sale of Infringing Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendants' Infringing Products are products authorized by RII for sale under the CAMEL Marks, partaking of the same qualities and characteristics as products bearing the CAMEL Marks, when such is not the case.

35. By the unauthorized sale of the Infringing Products, Defendants have infringed and continue to infringe the registered CAMEL Marks, as shown in the CAMEL Registrations, respectively, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

36. Defendants' unauthorized sale of the Infringing Products, and Defendants' unauthorized use of the CAMEL Marks or colorable imitations of these above-listed marks owned by RII, in connection with the sale of such products, as alleged above, was intentionally done with a view and purpose of trading on and benefiting from the substantial reputation and goodwill in the United States associated with the CAMEL Marks.

37. Defendants' acts of trademark infringement, as alleged herein, have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct. In addition, Defendants have been unjustly enriched by reason of their trademark infringement in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

38. Defendants' trademark infringement as alleged herein has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill, unless Defendants' unlawful conduct is enjoined by this Court.

39. RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their infringing use of the CAMEL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the offering for sale and sale of electronic cigarette and liquid nicotine products or related products, and the costs of this action.

40. Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

**SECOND CLAIM FOR RELIEF**
(Federal Unfair Competition, False Representation, and
False Designation of Origin under 15 U.S.C. § 1125(a))

41. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

42. Defendants' unauthorized use of the CAMEL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the sale of Defendants' Infringing Products, constitutes unfair competition, false representation, and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is causing and, unless enjoined by this Court, will continue to cause confusion, to cause mistake, or to deceive purchasers and consumers as to the source, origin, or sponsorship of Defendants' products.

43. As a direct and proximate result of Defendants' unfair competition, false representation, and false designation of origin as herein alleged, RII has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill. Defendants' unfair competition, false representation, and false designation of origin has caused and will continue to cause RII to lose sales to which it would otherwise be entitled, unless such unlawful conduct is enjoined by this Court.

44. RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unauthorized use of the CAMEL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the offering for sale and sale of electronic cigarette and liquid nicotine products or related products, and the costs of this action.

45. Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

## THIRD CLAIM FOR RELIEF
### (Dilution of Federally Registered Trademarks under 15 U.S.C. § 1125(c))

46. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

47. The CAMEL Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods. The CAMEL Marks became famous long prior to Defendant's unlawful use of the CAMEL Marks, or colorable imitations thereof, as alleged herein.

48. Defendants' use of the CAMEL Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of her Infringing Products is likely to dilute RII's famous CAMEL Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous CAMEL Marks and by harming the reputation and goodwill of the famous CAMEL Marks.

49. Defendants' unauthorized use of the CAMEL Marks in connection with the sale in the United States of Defendants' Infringing Products, is intended and has the effect of trading on Reynolds's reputation and likely causing dilution of the famous CAMEL Marks.

50. On information and belief, Defendants cannot assert any rights in the CAMEL Marks that are prior to RII's first use, actual or constructive, of the CAMEL

15

Marks.

51. Defendants' trademark dilution as herein alleged has injured and will continue to injure RII in that RII has suffered and will continue to suffer damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct, unless such unlawful conduct is enjoined by this Court. In addition, Defendants have been unjustly enriched by reason of their acts of trademark dilution in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

52. RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unlawful use of the CAMEL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with Defendants' offering for sale and sale of electronic cigarette and liquid nicotine products or related products, and the costs of this action.

53. Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

**FOURTH CLAIM FOR RELIEF**
**(Common Law Trademark Infringement and Unfair Competition)**

54. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

55. Defendants' conduct as alleged above constitutes trademark infringement and unfair competition in violation of the common law of the State of North Carolina.

56.     Defendants' trademark infringement and unfair competition as alleged above has injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct.  In addition, Defendants have been unjustly enriched by reason of her trademark infringement and unfair competition in that Defendants have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

57.     Unless enjoined by this Court, Defendants' trademark infringement and unfair competition as herein alleged will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill.

58.     Defendants' wrongful conduct as above alleged was accompanied by circumstances of willfulness and deliberate indifference to the rights of RII, warranting the assessment of punitive damages.

## FIFTH CLAIM FOR RELIEF
**(Unfair and Deceptive Trade Practices
under N.C. Gen. Stat. § 75-1 *et seq.*)**

59.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

60.     Defendants' conduct as alleged above is in commerce and affects commerce in the State of North Carolina.

61.     Defendants' conduct as alleged above constitutes unfair methods of competition and unfair and deceptive acts and practices in violation of N.C. Gen. Stat. § 75-1 *et seq.*

17

62. Defendants' unfair methods of competition and their unfair and deceptive trade practices as alleged herein have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendant's illegal conduct. In addition, Defendants have been unjustly enriched by reason of their unfair methods of competition and unfair and deceptive trade practices in that Defendants have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

63. Defendants have willfully engaged in the acts and practices alleged above, justifying an award of attorneys' fees to RII pursuant to N.C. Gen. Stat. § 75-16.1.

**WHEREFORE**, RII prays the Court as follows:

1. That Defendants, their affiliates, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any and all further unauthorized promotion, marketing, advertising, sale, offering for sale, or distribution of products bearing the CAMEL Marks, or colorable imitations thereof, including without limitation Defendants' Infringing Products;

2. That Defendants, their affiliates, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any unauthorized sale, offering for sale, or distribution of products bearing any trademark owned by RII, or any colorable imitations thereof;

3. That RII have and recover of Defendants such actual damages as RII may prove at trial;

4. That Defendants account to RII for all of Defendants' profits derived as a direct and proximate result of Defendants' unlawful conduct;

5. That such damages and/or profits to which RII is entitled be trebled pursuant to 15 U.S.C. § 1117 and N.C. Gen. Stat. § 75-16;

6. That, in the alternative to treble damages and/or profits, RII have and recover punitive damages of Defendants;

7. That the costs of this action, including a reasonable attorneys' fee, be taxed against Defendants; and

8. That the Court grant RII such other and further relief as the Court may deem just and proper.

This the 15th day of April, 2015.

*s/William M. Bryner*

KILPATRICK TOWNSEND & STOCKTON LLP

William M. Bryner, N.C. State Bar No. 23022
Harris W. Henderson N.C. State Bar No. 43399
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: 336-607-7300
Facsimile: 336-607-7500
wbryner@kilpatricktownsend.com
hhenderson@kilpatricktownsend.com

*Attorneys for Plaintiff Reynolds Innovations Inc.*
